**In re David GREEN, Jr., Debtor.**

No. 04–11742–JDW.

United States Bankruptcy Court,
M.D. Georgia,
Albany Division.

Dec. 17, 2004.

George W. Woodall, Albany, GA, for Debtor.

Paul L. Cames, Warner Robins, GA, for Trustee.

## MEMORANDUM OPINION

JAMES D. WALKER, JR., Bankruptcy Judge.

This matter comes before the Court on Trustee's Objection to Debtor's Exemp-tions. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(B). Af-ter considering the pleadings, the evi-dence, and the applicable authorities, the Court enters the following findings of fact and conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

### Findings of Fact

Debtor, David Green, Jr., filed a Chap-ter 7 petition on August 3, 2004. On Schedule A–Real Property, he listed his residence, valued at $22,600, and indicated that it is unencumbered. Debtor is the sole owner of the property. Debtor cur-rently is married. He testified at the 341(a) meeting of creditors that he has been separated from his wife since 1983 or 1984. He further testified that he pur-chased his home in 1989. His wife has never lived in the home. She is sole owner of a separate property that she maintains as her residence.

Debtor has claimed a $20,000 exemption in his residence based on the plain lan-guage of Official Code of Georgia ("O.C.G.A.") § 44–13–100(a)(1). The trus-tee has objected to the exemption on the ground that the statute was never intend-ed to cover married debtors who had lived in a state of separation for a prolonged period of time.

The Court held a hearing on the objec-tion on November 18, 2004, at which the parties stipulated to the above-recited facts. After considering the arguments of the parties, the Court will overrule the trustee's objection.

### Conclusions of Law

This case relies on an interpreta-tion of the Georgia homestead exemption, codified at O.C.G.A. § 44–13–100(a)(1). This Court has previously relied upon the

United States Supreme Court's guidelines for interpreting the Bankruptcy Code to construe this statute. *In re Burnett,* 303 B.R. 684, 686 (Bankr.M.D.Ga.2003) (Walker, J.) (citing *Toibb v. Radloff,* 501 U.S. 157, 162, 111 S.Ct. 2197, 2200, 115 L.Ed.2d 145 (1991)). In that case, the Court focused on the plain, unambiguous language of the statute to the exclusion of any evidence of legislative intent. *Id.* In this case, the Court was asked to consider that the O.C.G.A. provides its own and arguably different guidelines for statutory interpretation as follows:

In all interpretations of statutes, the courts shall look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy. Grammatical errors shall not vitiate a law. A transposition of words and clauses may be resorted to when a sentence or clause is without meaning as it stands.

O.C.G.A. § 1–3–1(a) (Supp.2004).

Trustee argues that the Court is obligated to "diligently" inquire into legislative intent when interpreting the homestead exemption. Unlike Congress, the Georgia General Assembly does not produce a comprehensive legislative history. In fact, the only evidence of legislative intent available to the Court is the previous version of the homestead exemption, which was amended in 2001.[1]

Prior to its amendment, the statute provided an exemption of:

The debtor's aggregate interest, not to exceed $5,000.00 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a

burial plot for the debtor or a dependent of the debtor[.]

2001 Ga. Laws Act 220, H.B. 373.

The amended version provides for a homestead exemption as follows:

The debtor's aggregate interest, not to exceed $10,000.00 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor. In the event title to property used for the exemption provided under this paragraph is in one of two spouses who is a debtor, the amount of the exemption hereunder shall be $20,000.00[.]

O.C.G.A. § 44–13–100(a)(1) (2002).

Only two changes were made. First, the exemption amount was increased from $5,000 to $10,000. Second, the last sentence was added to increase the exemption amount to $20,000 for a married debtor in certain circumstances. At best, it may be reasonable to infer that the legislature wanted to ensure that married debtors always get the benefit of a double exemption as if both spouses were debtors and the property jointly owned. So it added a sentence to cover one specific set of circumstances under which they might otherwise be denied the double exemption. The sentence in question contains no grammatical errors and dictates a clear standard for application in this case. There is no way for the Court to determine that the result in this case is contrary to the intent of the General Assembly.

---

1. In the *Bennett* case, Trustee proffered testimony as to legislative intent from a member of the legislature who sponsored the 2001 amendment. The court refused to consider that testimony as evidence of legislative intent.

■ The Court can only read what the legislature puts before it. It is not within the Court's province to rewrite the statute based on one party's notion of fairness in a particular set of unusual circumstances. Furthermore, O.C.G.A. § 1–3–1 does not invite the Court to usurp the power of the General Assembly by legislating from the bench each time the exemption statute creates an unusual result. This statute is a part of a body of state domestic relation laws with important moral and social implications. While the legislature understandably would not want inadvertent typographical or stylistic errors in the language of statutes to void the meaning of a statute, neither would it want the courts to reject the natural consequences of a statute's plain language by characterizing the result as unintentional.

In this case, Debtor is married and he has sole title to his residence. His spouse is not a bankruptcy debtor. In other words, "title to property used for the exemption provided under this paragraph is in one of two spouses who is a debtor." The "separated" spouse is no less a spouse than one who resides with a debtor. The duration of the separation, while indicative of a desire to discontinue the traditional role of spouse, is not determinative of a circumstance that would authorize the court to consider such a person as an entity other than a "spouse" as used in the statute. If the court were authorized to create a new definition for the term "spouse" as used in the statute, it would have to include a person recently separated from the marital partner in order to preserve the legislative intent to prevent the depletion of the marital estate in bankruptcy. Should such a right expire after a judicially determined period of time? And should the court decline to apply the last sentence of the statute when the separated spouse purchases her own residence?

The trustee has argued the language of the statute in this case would create an absurd result that should not be applied by this Court. Either it would create a special class of filers—those who are married but separated—who each could take a $20,000 exemption, or it would create a situation in which the first spouse to file would receive a full exemption of $20,000, while depriving the other spouse of the right to claim an exemption in her residence.

The trustee's first scenario, in which a married couple living apart could claim a total of $40,000 in homestead exemptions, is incorrect. The last sentence of O.C.G.A. § 44–13–100(a)(1) applies only when one spouse is a debtor. Once Debtor claims his $20,000, his wife may be unable to claim a homestead exemption should she later file for bankruptcy because, at that point, both spouses may be characterized as "debtors" in the terminology of the statute, thus barring the other spouse from claiming an additional exemption. While this suggests that the trustee's second scenario may be accurate, it is not an absurd result. The trustee's argument ignores the fact that Debtor's wife has an equitable interest in Debtor's residence for as long as she is married to Debtor. Therefore, she may benefit from the exemption. Whether or not she chooses to try to realize that benefit by exercising her rights in the property in a state court domestic relations case would be her separate decision. While the value of this equitable interest may be diminished by the passing of time, circumstances in a particular case may point to an opposite result. While the determination of the value of the equitable interest in the state court may be fairly characterized as subjective, the determination of the bankruptcy exemption should be objective, consistent, and predictable from one case to another.

Regardless of whether this situation seems fair to the nondebtor spouse or to Debtor's creditors, it is consistent with the language of the exemption provision as written. There is no basis for inferring legislative intent to allow married couples—whether they live together or separately—to spread a $20,000 exemption across multiple residences. If the General Assembly wanted to carve out a different exemption rule for separated spouses, it could have stated such an intent clearly in the language of the statute. Perhaps it may choose to do so in some future amendment.

For the foregoing reasons, the Court will overrule the trustee's objection and allow Debtor to claim a $20,000 exemption in his residence.

An Order in accordance with this Opinion will be entered on this date.

### ORDER

In accordance with the Memorandum Opinion entered on this date, the Court hereby OVERRULES the Trustee's Objection to Debtor's Exemptions.

So ORDERED, this 17th day of December, 2004.